UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT                EMPLOYEES
INSURANCE CO., GEICO INDEMNITY
CO.,  GEICO  GENERAL  INSURANCE
COMPANY and GEICO CASUALTY CO.,

     Plaintiffs,

vs.

RONALD PANELLA, M.D., BEST CARE
MEDICAL      GROUP     INC.,     JORGE
CONSUEGRA,  GULF  BAY  CARE  LLC,
CARLOS ENRIQUE FOSSI, M.D., YUNIER
RODRIGUEZ, ROSMERY LINARES-CHI,
MEMORIAL  MEDICAL  CENTER  INC.,
LIUSBIT PORTAL, MAVYS HUICE SOSA,
L.M.T,    METROPOLITAN      MEDICAL
GROUP    LLC,    JORGE    RODRIGUEZ-
LORENZO, SERENITY MEDICAL REHAB
INC.,      LIAMARELIS         HURTADO-
HERNANDEZ,    GUARDIAN      ANGEL
HEALTH    SERVICES    INC.,    ALEXEIS
MACUYA-HORTA,   MURTHY  RAVIPATI,
M.D., STEPHEN DIAMANTIDES, D.C.,
LUIS  MERCED,  M.D.,  TAMARA  SOTO,
L.M.T.,    MARIO     MORALES,    L.M.T.,
GLENDA SANTIAGO, L.M.T., EILIANY
GONZALEZ,        L.M.T.,        CLAUDIA
HERNANDEZ, L.M.T., WALTER DIAZ,
L.M.T.,    RAQUEL     OLIVA,    L.M.T.,
ARIANNA PEREZ, L.M.T., ANETTER M.
DE  DIOS  LUIS,  L.M.T.,  NEYDA  SILVA,
L.M.T., JOSEFINA SOSA, L.M.T. ADDRYS
ABELLA   TORRES,   L.M.T.,   MAYLET
LIMA, L.M.T., and HUMBERTO LOPEZ,
L.M.T.,

     Defendants.

_____/

Case No.:


Jury Trial Demanded

<u>COMPLAINT AND DEMAND FOR A JURY TRIAL</u>

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue Defendants and allege as follows:

1.      This action seeks to recover more than $6,000,000.00 that Defendants wrongfully obtained from GEICO by submitting, and causing to be submitted, thousands of fraudulent and unlawful no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants Best Care Medical Group Inc. ("Best Care Medical"), Gulf Bay Care LLC ("Gulf Bay Care"), Memorial Medical Center Inc. ("Memorial Medical"), Metropolitan Medical Group LLC ("Metropolitan Medical"), Serenity Medical Rehab Inc. ("Serenity Medical"), and Guardian Angel Health Services Inc. ("Guardian Angel Health")(collectively the "Clinic Defendants"), relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including putative initial examinations, follow up examinations, and physical therapy services (collectively the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies. In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of pending, fraudulent no-fault insurance claims that Defendants have submitted or caused to be submitted through the Clinic Defendants, because of the fraudulent and unlawful activity set forth herein.

2.      Each and every charge submitted through the respective Clinic Defendants since at least 2013 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits "1" – "6" set forth a large and representative sample of the fraudulent and unlawful claims that have been identified to date that have been submitted to GEICO by mail through the respective Clinic Defendants. Defendants' interrelated fraudulent schemes began no later than 2013, and have continued uninterrupted since that time.

<u>THE PARTIES</u>

3.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

4.      The Defendants are as follows:

(i)      Defendant Ronald Panella, M.D. ("Panella") resides in and is a citizen of Florida. Panella was licensed to practice medicine in Florida on February 28, 1984. Panella falsely purported to serve as medical director at the Clinic Defendants, and purported to perform many of the Fraudulent Services on behalf of the Clinic Defendants.

(ii)     Defendant Best Care Medical is a Florida corporation with its principal place of business in Florida. At all relevant times, Best Care Medical falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Florida Health Care Clinic Act (the "Clinic Act", Fla. Stat. § 400.990 et seq.). Best Care Medical was incorporated in Florida on or about July 31, 2015, purported to be owned and controlled by Defendant Jorge Consuegra ("Consuegra"), falsely purported to have Panella as its medical director, and was used as a vehicle to submit fraudulent and

unlawful no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by Defendants Panella, Murthy Ravipati, M.D. ("Ravipati"), Stephen Diamantides, D.C. ("Diamantides"), Tamara Soto, L.M.T. ("Soto"), Mario Morales, L.M.T. ("Morales"), Glenda Santiago, L.M.T. ("Santiago"), and Eiliany Gonzalez, L.M.T. ("Gonzalez") (Defendants Best Care Medical, Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez collectively are referred to as the "Best Care Medical Defendants").

(iii)  Defendant Gulf Bay Care is a Florida limited liability company with its principal place of business in Florida. At all relevant times, Gulf Bay Care falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Clinic Act. Gulf Bay Care was organized in Florida on or about September 14, 2016, purported to have Defendant Yunier Rodriguez ("Y. Rodriguez") as its member between October 2016 and December 2018, and purported to have Defendant Rosmery Linares-Chi ("Linares-Chi") as its member between December 2018 and the present, falsely purported to have Defendants Carlos Enrique Fossi, M.D. ("Fossi") and Panella as its medical directors, and was used as a vehicle to submit fraudulent and unlawful no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by Defendants Panella, Ravipati, Diamantides, Soto, Gonzalez, and Claudia Hernandez, L.M.T. ("C. Hernandez")(Defendants Gulf Bay Care, Y. Rodriguez, Linares-Chi, Fossi, Panella, Ravipati, Diamantides, Soto, Gonzalez, and C. Hernandez collectively are referred to as the "Gulf Bay Care Defendants").

(iv)  Defendant Memorial Medical is a Florida corporation with its principal place of business in Florida. At all relevant times, Memorial Medical falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Clinic Act. Memorial Medical was incorporated in Florida on or about December 9, 2014, purported to be co-owned and controlled by Defendants Lisbet Portal ("Portal") and Mavys Huice Sosa, L.M.T. ("Huice Sosa"), falsely purported to have Panella as its medical director, and was used as a vehicle to submit fraudulent and unlawful no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by Defendants Walter Diaz, L.M.T. ("Diaz") and Huice Sosa (Defendants Memorial

Medical, Portal, Panella, Diaz, and Huice Sosa collectively are referred to as the "Memorial Medical Defendants").

(v)     Defendant Metropolitan Medical is a Florida limited liability company with its principal place of business in Florida. At all relevant times, Metropolitan Medical falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Clinic Act. Metropolitan Medical was organized in Florida on or about February 10, 2004, had Defendant Jorge Rodriguez-Lorenzo ("Rodriguez-Lorenzo") as its member, falsely purported to have Panella as its medical director, and was used as a vehicle to submit fraudulent and unlawful no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by Defendants Luis Merced, M.D. ("Merced"), Raquel Oliva, L.M.T. ("Oliva"), Arianna Perez, L.M.T. ("Perez"), Anetter M. De Dios Luis, L.M.T. ("De Dios"), Neyda Silva, L.M.T. ("Silva"), and Josefina Sosa, L.M.T. ("Sosa")(Defendants Metropolitan Medical, Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa collectively are referred to as the "Metropolitan Medical Defendants").

(vi)    Defendant Serenity Medical is a Florida corporation with its principal place of business in Florida. At all relevant times, Serenity Medical falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Clinic Act. Serenity Medical was incorporated in Florida on or about March 16, 2010, purported to be owned and controlled by Defendant Liamarelis Hurtado-Hernandez ("Hurtado-Hernandez"), falsely purported to have Panella as its medical director, and was used as a vehicle to submit fraudulent and unlawful no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by Defendants Ravipati, Morales, and Gonzalez. (Defendants Serenity Medical, Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez collectively are referred to as the "Serenity Medical Defendants").

(vii)   Defendant Guardian Angel Health is a Florida corporation with its principal place of business in Florida. At all relevant times, Guardian Angel Health falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Clinic Act. Guardian Angel Health was incorporated in Florida on or about February 28, 2005, purported to be owned and controlled by Defendant Alexeis Macuya-Horta ("Macuya-Horta"),

falsely purported to have Panella as its medical director, and was used as a vehicle to submit fraudulent and unlawful no-fault insurance billing to GEICO and other insurers, including billing for Fraudulent Services that purportedly were performed by Defendants Ravipati, Addrys Abella Torres, L.M.T. ("Torres"), Maylet Lima, L.M.T. ("Lima"), and Humberto Lopez, L.M.T. ("Lopez")(Defendants Guardian Angel Health, Macuya-Horta Panella, Ravipati, Torres, Lima, and Lopez collectively are referred to as the "Guardian Angel Health Defendants").

(viii)   All of the natural person Defendants reside in and are citizens of Florida.

<u>JURISDICTION AND VENUE</u>

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.  This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 <u>et</u> <u>seq.</u> (the Racketeer Influenced and Corrupt Organizations ("RICO") Act). In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

6.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Middle District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

<u>ALLEGATIONS</u>

I.    <u>Brief Overview of Pertinent Law Governing No-Fault Insurance Reimbursement</u>

7.      Florida requires automobile insurers to PIP insurance benefits ("PIP

Benefits") to Insureds when they are injured in a motor vehicle accident. See Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

8.      Under the No-Fault Law, a health care services provider who possesses an assignment of PIP Benefits from an Insured and who provides medically necessary health care services to an Insured may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form" or "CMS-1500" form).

9.      In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided, medically necessary, and the bill for the service cannot misrepresent the nature, extent, or results of the service that was provided. Insurers such as GEICO are not required to pay anyone who knowingly submits a false or misleading statement relating to a PIP claim or charges.  See Fla. Stat. § 627.736.

10.     In addition, the No-Fault Law prohibits PIP reimbursement for massage or for any services provided by massage therapists. See Fla. Stat. § 627.736.

11.     Pursuant to the Clinic Act, clinics operating in Florida must – among other things – appoint a physician as a medical director who must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful", and take immediate corrective action upon discovery of a fraudulent or unlawful charge. See Fla. Stat. § 400.9935(1).  In addition, a clinic medical director must "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided." See Fla. Stat. § 400.9935(1).

12.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating in violation of this part . . . is an unlawful charge." See Fla. Stat. § 400.9935(3).

## II.     Defendants' Interrelated Fraudulent and Unlawful Schemes

## A.     The Fraudulent and Unlawful Operation of the Clinic Defendants Without Legitimate Medical Directors

13.     Because the Clinic Defendants were subject to the Clinic Act, Consuegra, Y. Rodriguez, Linares-Chi, Portal, Huice-Sosa, Rodriguez-Lorenzo, Hurtado-Hernandez, and Macuya-Horta (collectively the "Clinic Owner Defendants") could not operate the Clinic Defendants unless licensed physicians were employed as the Clinic Defendants' respective medical directors. However, if the Clinic Owner Defendants retained legitimate physicians to serve as the Clinic Defendants' medical directors, any such legitimate physicians actually would be obligated to fulfill the statutory requirements applicable to a clinic medical director, which would impede the Defendants' interrelated schemes, as described herein.

14.     Accordingly, each of the Clinic Owner Defendants retained Panella, a licensed physician who was willing to falsely pose as the legitimate medical director of each of the respective Clinic Defendants.

15.     Prior to retaining Panella to falsely pose as the legitimate medical director at Gulf Bay Care, Y. Rodriguez retained Fossi, a licensed physician who likewise was willing to falsely pose as the legitimate medical director at Gulf Bay Care.

16.     In order to circumvent Florida law and induce the Florida Agency for Health Care Administration to permit the Clinic Defendants to operate as health care clinics, the Clinic Defendants and their respective Clinic Owner Defendants entered into secret schemes with Panella. Similarly, prior to entering into a secret scheme with Panella, Y. Rodriguez and Gulf Bay Care entered into a secret scheme with Fossi. In exchange for compensation from the respective Clinic Defendants and Clinic Owner Defendants, Panella and Fossi agreed to falsely represent, to the Florida Agency for Health Care Administration, to the Insureds who sought treatment at the Clinic Defendants, and to the insurers including GEICO that received PIP claims from the Clinic Defendants, that they were the true medical directors at the respective Clinic Defendants, and that they truly fulfilled the statutory requirements applicable to clinic medical directors at the Clinic Defendants.

17.     However, Panella and Fossi never genuinely served as medical directors for the respective Clinic Defendants. Instead, from the beginning of each of their associations with the respective Clinic Defendants, they ceded all day-to-day decision-making and oversight regarding healthcare services to the respective Clinic Owner Defendants and their associates.

18.     As set forth herein, in keeping with the fact that Panella and Fossi never legitimately served as medical directors at the respective Clinic Defendants, Panella and Fossi: (i) never ensured that all health care practitioners at the respective Clinic Defendants had active appropriate certification or licensure for the level of care being provided; (ii) never conducted systematic reviews of the Clinic Defendants' billings to

ensure that the billings were not fraudulent or unlawful; and (iii) never even made any attempt to discover the fraudulent and unlawful charges submitted through the Clinic Defendants, much less take any immediate corrective action. See Fla. Stat. § 400.9935(1).

19.    In further keeping with the fact that Panella never legitimately served as medical director at each of the individual Clinic Defendants, Panella simultaneously: (i) purported to serve as medical director at numerous other Florida clinics, and (ii) purported to personally perform, or at least directly supervise, a massive number of individual health care services for all of the Clinic Defendants and also at other clinics.

20.    It is not possible that Panella could have simultaneously fulfilled these various roles while also fulfilling his medical director role at any of the respective Clinic Defendants.

21.    The Clinic Owner Defendants used the façade of Panella and Fossi's phony appointment as the respective Clinic Defendants' ersatz "medical directors" to do indirectly what they were forbidden from doing directly – namely, and as set forth more fully herein: (i) to operate health care clinics without legitimate medical directors; (ii) to engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at the Clinic Defendants; (iii) to permit health care services to be provided at the Clinic Defendants by individuals who lacked the proper licensure to perform the services; and (iv) to use the Clinic Defendants as vehicles to submit a massive amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

22.     In fact, the only thing that Panella and Fossi did during their phony tenures as medical director at the respective Clinic Defendants was to occasionally sign bills and treatment reports prepared by other of the respective Clinic Defendants' personnel, at their respective Clinic Owner Defendants' direction.

23.     Panella and Fossi unlawfully permitted the Clinic Owner Defendants to dictate the manner in which Insureds would be treated at the respective Clinic Defendants, and to dictate the manner in which health care services at the respective Clinic Defendants would be billed to GEICO and other insurers, because they sought to continue profiting from the fraudulent billing submitted through the Clinic Defendants.

**B.     The Fraudulent Misrepresentations Regarding the Identities of the Health Care Providers Rendering Services at the Clinic Defendants**

24.     Each of the Defendants caused GEICO to be billed for a limited range of Fraudulent Services, namely purported: (i) initial patient examinations; (ii) follow-up patient examinations; and (iii) physical therapy services. As set forth in Exhibits "1" – "6", the purported physical therapy services constituted the vast majority of the Fraudulent Services billed through each of the Clinic Defendants to GEICO.

25.     All of the "physical therapy" services that Defendants purported to provide between at least 2013 and the present were performed – to the extent that they were performed at all – by unsupervised massage therapists including: (i) Soto, Morales, Santiago, and Gonzalez at Best Care Medical; (ii) C. Hernandez, Soto, and Gonzalez at Gulf Bay Care; (iii) Diaz and Huice Sosa at Memorial Medical; (iv) Oliva, Perez,

De Dios, Silva, and Sosa at Metropolitan Medical; (v) Morales and Gonzales at Serenity Medical and (vi) Torres, Lima, and Lopez at Guardian Angel Health.

26.     Soto, Morales, Santiago, Gonzalez, C. Hernandez, Diaz, Huice Sosa, Oliva, Perez, De Dios, Silva, Sosa, Torres, Lima, and Lopez (collectively the "Massage Therapist Defendants") were only licensed as massage therapists. The Massage Therapist Defendants were never licensed as physical therapists.

27.     The Defendants were well-aware of the fact that the Clinic Defendants could not legally recover PIP Benefits for "physical therapy" or any other kinds of health care services performed by massage therapists such as the Massage Therapist Defendants.

28.     Accordingly, the Defendants falsely represented – in many of the bills for "physical therapy" services that they submitted or caused to be submitted through the respective Clinic Defendants to GEICO – that Panella, a licensed physician, had either performed or directly supervised the putative physical therapy services.

29.     In reality, Panella neither performed nor supervised any of the physical therapy services that were billed through the respective Clinic Defendants to GEICO.

30.     In keeping with the fact that Panella neither performed nor directly supervised any of the physical therapy services that were billed through the Clinic Defendants to GEICO, Panella – who was in his late 60s and early 70s at the time – often purported to personally perform or directly supervise more than 20, 30, 40, or even 50 hours of "physical therapy" services for GEICO Insureds on individual dates, often

at several of the Clinic Defendants and other clinics, and at several different locations, per day.

31.   For example:

(i)   On April 18, 2016, Metropolitan Medical, Rodriguez-Lorenzo, and Panella purported to provide at least 26 individual physical therapy services to at least 6 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 6.5 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 83 additional physical therapy services purportedly provided to at least 26 additional GEICO Insureds at AZ Medical Center, Best Care Therapy, Guardian Angel Health, Memorial Medical Center, and Metropolitan Medical, including at least 20.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 27.25 hours of services that Panella purported to personally perform, or at least directly supervise, on April 18, 2016.

(ii)  On January 17, 2017, Best Care Medical, Consuegra, and Panella purported to provide at least 27 individual physical therapy services to at least 5 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 6.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 68 additional physical therapy services purportedly provided to at least 17 additional GEICO Insureds at AZ Medical Center, Guardian Angel Health, Memorial Medical, Metropolitan Medical, and New Age Healing Center, including at least 17 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 23.75 hours of services that Panella purported to personally perform, or at least directly supervise, on January 17, 2017.

(iii)    On January 15, 2018, Gulf Bay Care, Linares-Chi, and Panella purported to provide at least 25 individual physical therapy services to at least 5 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 6.25 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 94 <u>additional</u> physical therapy services purportedly provided to at least 22 <u>additional</u> GEICO Insureds at AZ Medical Center, Best Care Medical, Guardian Angel Health, Memorial Medical, and Metropolitan Medical, including at least 23.5 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 29.75 hours of services that Panella purported to personally perform, or at least directly supervise, on January 15, 2018.

(iv)    On January 18, 2018, Guardian Angel Health, Macuya-Horta, and Panella purported to provide at least 27 individual physical therapy services to at least 6 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 6.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 103 <u>additional</u> physical therapy services purportedly provided to at least 24 <u>additional</u> GEICO Insureds at AZ Medical Center, Best Care Medical, Gulf Bay Care, Memorial Medical, and Metropolitan Medical, including at least 25.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 32.5 hours of services that Panella purported to personally perform, or at least directly supervise, on January 18, 2018.

(v)    On September 27, 2018, Metropolitan Medical, Rodriguez-Lorenzo, and Panella purported to provide at least 27 individual physical therapy services to at least 6 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 6.75 hours of physical therapy services that required direct, one-on-one patient contact between the

treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise, at least 128 <u>additional</u> physical therapy services purportedly provided to at least 27 <u>additional</u> GEICO Insureds at AZ Medical Center, Best Care Medical, Gulf Bay Care, and Memorial Medical, including at least 32 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 38.75 hours of services that Panella purported to personally perform, or at least directly supervise, on September 27, 2018.

(vi)     On February 26, 2019, Serenity Medical, Hurtado-Hernandez, and Panella purported to provide at least 56 individual physical therapy services to at least 11 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 7.25 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 119 <u>additional</u> physical therapy services purportedly provided to at least 25 <u>additional</u> GEICO Insureds at Best Care Medical, Gulf Bay Care, Memorial Medical, Metropolitan Medical, and Wechsel Pain and Rehab Center, including at least 29.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 37 hours of services that Panella purported to personally perform, or at least directly supervise, on February 26, 2019.

(vii)    On February 28, 2019, Memorial Medical, Portal, Huice-Sosa, and Panella purported to provide at least 46 individual physical therapy services to at least 11 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 11.5 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 163 <u>additional</u> physical therapy services purportedly provided to at least 32 <u>additional</u> GEICO Insureds at Best Care Medical, Gulf Bay Care, Metropolitan Medical, Serenity Medical, and Wechsel Pain and Rehab Center, including at least 40.75 hours of physical therapy services that required direct, one-on-one patient contact between the

treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 52.25 hours of services that Panella purported to personally perform, or at least directly supervise, on February 28, 2019.

(viii)   On April 16, 2019, Serenity Medical, Hurtado-Hernandez, and Panella purported to provide at least 55 individual physical therapy services to at least 11 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 13.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 118 additional physical therapy services purportedly provided to at least 25 additional GEICO Insureds at AZ Medical Center, Best Care Medical, Gulf Bay Care, Memorial Medical, Metropolitan Medical, including at least 29.5 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 43.25 hours of services that Panella purported to personally perform, or at least directly supervise, on April 16, 2019.

(ix)   On April 23, 2019, Memorial Medical, Portal, Huice-Sosa, and Panella purported to provide at least 32 individual physical therapy services to at least 7 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 8 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 112 additional physical therapy services purportedly provided to at least 25 additional GEICO Insureds at AZ Medical Center, Best Care Medical, Gulf Bay Care, Metropolitan Medical, and Serenity Medical, including at least 28 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 36 hours of services that Panella purported to personally perform, or at least directly supervise, on April 23, 2019.

(x)   On June 26, 2019, Metropolitan Medical, Rodriguez-Lorenzo, and Panella purported to provide at least 18 individual physical therapy

services to at least 4 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 4.5 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 100 <u>additional</u> physical therapy services purportedly provided to at least 22 <u>additional</u> GEICO Insureds at AZ Medical Center, Best Care Medical, Gulf Bay Care, Memorial Medical, and Serenity Medical, including at least 25 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 29.5 hours of services that Panella purported to personally perform, or at least directly supervise, on June 26, 2019.

(xi)   On July 2, 2019, Serenity Medical, Hurtado-Hernandez, and Panella purported to provide at least 23 individual physical therapy services to at least 5 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 5.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 100 <u>additional</u> physical therapy services purportedly provided to at least 23 <u>additional</u> GEICO Insureds at AZ Medical, Best Care Medical, Gulf Bay Care, Memorial Medical, and Metropolitan Medical, including at least 25 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 30.75 hours of services that Panella purported to personally perform, or at least directly supervise, on July 2, 2019.

(xii)  On September 26, 2019, Serenity Medical, Hurtado-Hernandez, and Panella purported to provide at least 51 individual physical therapy services to at least 11 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 12.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly

supervise at least 139 <u>additional</u> physical therapy services purportedly provided to at least 29 <u>additional</u> GEICO Insureds at AZ Medical Center, Best Care Medical, Guardian Angel Health, Gulf Bay Care, Memorial Medical, and Metropolitan Medical, including at least 34.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 47.5 hours of services that Panella purported to personally perform, or at least directly supervise, on September 26, 2019.

(xiii)   On October 1, 2019, Serenity Medical, Hurtado-Hernandez, and Panella purported to provide at least 86 individual physical therapy services to at least 18 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 21.5 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 201 <u>additional</u> physical therapy services purportedly provided to at least 43 <u>additional</u> GEICO Insureds at AZ Medical, Best Care Medical, Guardian Angel Health, Gulf Bay Care, Memorial Medical, and Metropolitan Medical, including at least 50.25 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 71.75 hours of services that Panella purported to personally perform, or at least directly supervise, on October 1, 2019.

(xiv)   On January 17, 2020, Gulf Bay Care, Linares-Chi, and Panella purported to provide at least 15 individual physical therapy services to at least 3 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 3.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 128 <u>additional</u> physical therapy services purportedly provided to at least 31 <u>additional</u> GEICO Insureds at Best Care Medical, Memorial Medical, Metropolitan Medical, and Serenity Medical, including at least 37 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 40.75 hours of services that Panella

purported to personally perform, or at least directly supervise, on October 1, 2019.

(xv)    On February 18, 2020, Memorial Medical, Portal, Huice-Sosa, and Panella purported to provide at least 71 individual physical therapy services to at least 16 individual Insureds, and falsely contended in the resulting bills to GEICO that Panella personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 17.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. That same day, Panella also purported to personally perform, or at least directly supervise at least 91 <u>additional</u> physical therapy services purportedly provided to at least 43 <u>additional</u> GEICO Insureds at AZ Medical, Best Care Medical, Gulf Bay Care, Metropolitan Medical, and Serenity Medical, including at least 22.75 hours of physical therapy services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 40.5 hours of services that Panella purported to personally perform, or at least directly supervise, on October 1, 2019.

32.    These are only representative examples. It is impossible that Panella – who was relatively advanced in age at the time, and simultaneously working or purporting to work at numerous other medical practices and clinics – routinely performed or supervised such a high volume of physical therapy services on individual dates, often at multiple of the Clinic Defendants and other clinics on individual dates.

33.    Upon information and belief, the fraudulent billing for physical therapy services that the Defendants submitted or caused to be submitted through the respective Clinic Defendants to GEICO constituted only a fraction of the <u>total</u> fraudulent billing for physical therapy services that the Defendants submitted through the respective Clinic Defendants to <u>all</u> of the automobile insurers in the Florida automobile insurance market.

34.     It is extremely improbable, to the point of impossibility, that the Defendants only submitted fraudulent billing to GEICO, and that the Defendants did not simultaneously bill other automobile insurers.

35.     Thus, upon information and belief, the impossible number of physical therapy services that Panella purported to directly supervise or perform for GEICO Insureds at the Clinic Defendants on individual dates of service constituted only a fraction of the <u>total</u> number of physical therapy services that Panella purported to directly supervise or perform at the Clinic Defendants, including for individuals insured by companies other than GEICO, on those same dates of service.

36.     In keeping with the fact that Panella and Fossi never legitimately fulfilled their required duties as "medical director" at the respective Clinic Defendants, each of the claims submitted by Defendants for physical therapy services identified in Exhibits "1" – "6" falsely represented that Panella had performed or at least directly supervised the underlying physical therapy services, so as to create the false appearance that the services were eligible for PIP reimbursement. In fact, the underlying physical therapy services were not eligible for PIP reimbursement, because they had been performed – to the extent they were performed at all – by massage therapists including: (i) Soto, Morales, Santiago, and Gonzalez at Best Care Medical; (ii) C. Hernandez, Soto, and Gonzalez at Gulf Bay Care; (iii) Diaz and Huice Sosa at Memorial Medical; (iv) Oliva, Perez, De Dios, Silva, and Sosa at Metropolitan Medical; (v) Morales and Gonzales at Serenity Medical and (vi) Torres, Lima, and Lopez at Guardian Angel Health.

37.    In the claims for physical therapy services identified in Exhibits "1" – "6", the Defendants routinely fraudulently misrepresented that the physical therapy services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor eligible for PIP reimbursement, because:

(i)    the putative physical therapy services were performed – to the extent they were performed at all – by massage therapists, without any supervision by anyone;

(ii)    the respective Clinic Defendants could not lawfully recover PIP Benefits for the putative physical therapy services, because they were performed by massage therapists; and

(iii)    the Defendants systematically fraudulently misrepresented that the physical therapy services were legitimately performed or supervised by Panella.

## C.    The Defendants' Fraudulent Treatment and Billing Protocols

38.    In the claims identified in Exhibits "1" – "6", virtually none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience.

39.    Even so – and in keeping with the fact that Panella and Fossi never legitimately served as medical director at any of the Clinic Defendants – the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

1.    **The Fraudulent Claims for Initial Examinations**

40.    As a first step in their fraudulent treatment and billing protocol, each of the Insureds in the claims identified in Exhibits "1" - "6" purportedly received an initial examination at the respective Clinic Defendants.

41.    Panella, Ravipati, and Diamantides purported to personally perform or directly supervise a substantial majority of the initial examinations in the claims identified in Exhibit "1".

42.    Panella and Ravipati purported to personally perform or directly supervise a substantial majority of the initial examinations in the claims identified in Exhibit "2".

43.    Panella purported to personally perform or directly supervise a substantial majority of the initial examinations in the claims identified in Exhibit "3".

44.    Panella and Merced purported to personally perform or directly supervise a substantial majority of the initial examinations in the claims identified in Exhibit "4".

45.    Panella and Ravipati purported to personally perform or directly supervise a substantial majority of the initial examinations in the claims identified in Exhibit "5".

46.    Panella and Ravipati purported to personally perform or directly supervise a substantial majority of the initial examinations in the claims identified in Exhibit "6".

47.    The purported initial examinations then were billed to GEICO in the following

manner:

(i)    In the claims identified in Exhibit "1", Best Care Medical, Consuegra, Panella, Ravipati, and Diamantides billed GEICO under CPT codes 99203 or 99204 for each initial examination that Panella, Ravipati, and Diamantides purportedly provided at Best Care Medical.

(ii)    In the claims identified in Exhibit "2", Gulf Bay Care, Y. Rodriguez, Linares-Chi, Fossi, Panella, and Ravipati billed GEICO under CPT codes 99203 or 99204 for each initial examination that Panella and Ravipati purportedly provided at Gulf Bay Care.

(iii)    In the claims identified in Exhibit "3", Memorial Medical, Portal, Huice-Sosa, and Panella billed GEICO under CPT codes 99203 or 99204 for each initial examination that Panella purportedly provided at Memorial Medical.

(iv)    In the claims identified in Exhibit "4", Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced billed GEICO under CPT codes 99203 or 99204 for each initial examination that Panella and Merced purportedly provided at Metropolitan Medical.

(v)    In the claims identified in Exhibit "5", Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati billed GEICO under CPT codes 99203 or 99204 for each initial examination that Panella and Ravipati purportedly provided at Serenity Health.

(vi)    In the claims identified in Exhibit "6", Guardian Angel Health, Macuya-Horta, Panella, and Ravipati billed GEICO under CPT codes 99203 or 99204 for each initial examination that Panella and Ravipati purportedly provided at Guardian Angel Health.

48.    Pursuant to the American Medical Association's CPT Assistant, which

governs reimbursement of PIP claims:

(i)    at all relevant times, the use of CPT code 99203 to bill for an initial patient examination represented – among other things – that: (a) the patient presented with problems of moderate severity; (b) the physician who conducted the examination spent at least 30 minutes of face-to-face time with the patient or the patient's family during the examination; (c) the physician who performed the examination conducted a "detailed"

physical examination; and (d) the physician who performed the examination engaged in "low complexity" medical decision-making; and

(ii)    at all relevant times, the use of CPT code 99204 to bill for an initial patient examination represented – among other things – that: (a) the patient presented with problems of moderate to high severity; (b) the physician who conducted the examination spent at least 45 minutes of face-to-face time with the patient or the patient's family during the examination; (c) the physician who performed the examination conducted a "comprehensive" physical examination; and (d) the physician who performed the examination engaged in "moderate complexity" medical decision-making.

49.    As set forth below, the charges for the initial examinations identified in Exhibits "1" - "6" were fraudulent and unlawful in that they misrepresented the nature, extent, and results of the initial examinations.

**(i)    Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

50.    To the extent that the Insureds in the claims identified in Exhibits "1" - "6" had any presenting problems at all as the result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

51.    For instance, in the vast majority of the claims identified in Exhibits "1" - "6" the Insureds did not seek treatment at any hospital as the result of their accidents. To the limited extent that the Insureds in the claims identified in Exhibits "1" - "6" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and discharged with nothing more serious than a minor soft tissue injury diagnosis such as a sprain or strain.

52.     Furthermore, in the substantial majority of the claims identified in Exhibits "1" - "6", contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were functional following the accidents, and that no one was seriously injured in the accidents, or injured at all.

53.     Even so, in the claims for initial examinations identified in Exhibits "1" - "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides made the following misrepresentations:

(i)     When billing GEICO for putative initial examinations using CPT code 99203 in the claims identified in Exhibits "1" – "6" Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the Insureds presented with problems of moderate severity, when in fact the Insureds' problems were low or minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

(ii)    When billing GEICO for putative initial examinations using CPT code 99204 in the claims identified in Exhibits "1" – "6" Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems were low or minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

54.     For example:

(i)     On May 29, 2015, an Insured named ZM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, rear-end collision, and that ZM's vehicle was drivable following the accident. The police report further indicated that ZM was not injured and did not complain of any pain at the scene. In keeping with the fact that ZM was not seriously injured, ZM did not visit any hospital emergency room following the accident. To the extent that ZM experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial

examination of ZM on June 3, 2015, Guardian Angel Health, Macuya-Horta, and Panella billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)  On October 15, 2016, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that JC was not injured and did not complain of any pain at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of JC on October 19, 2016, Best Care Medical, Consuegra, Ravipati, and Panella billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)  On August 4, 2017, an Insured named GM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, rear-end collision, and that GM's vehicle was drivable following the accident. The police report further indicated that GM was not injured and did not complain of any pain at the scene. In keeping with the fact that GM was not seriously injured, GM did not visit any hospital emergency room following the accident. To the extent that GM experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of GM on August 10, 2017, Gulf Bay Care, Y. Rodriguez, and Fossi billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(iv)  On October 20, 2017, an Insured named IG was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that IG's vehicle was drivable following the accident. The police report further indicated that IG was not injured and did not complain of any pain at the scene. In keeping with the fact that IG was not seriously injured, IG did not visit any hospital emergency room following the accident. To the extent that IG experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported

initial examination of IG on October 24, 2017, Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(v)     On September 29, 2017, an Insured named AM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AM's vehicle was drivable following the accident. The police report further indicated that AM was not injured and did not complain of any pain at the scene. In keeping with the fact that AM was not seriously injured, AM did not visit any hospital emergency room following the accident. To the extent that AM experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AM on October 4, 2017, Memorial Medical, Portal, and Panella billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(vi)    On September 12, 2018, an Insured named RB was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RB's vehicle was drivable following the accident. The police report further indicated that RB was not injured and did not complain of any pain at the scene. In keeping with the fact that RB was not seriously injured, RB did not visit any hospital emergency room following the accident. To the extent that RB experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of RB on September 18, 2018 Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vii)   On November 8, 2018, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that although JC complained of pain, JC refused medical attention at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as the result of the

accident, they were of low or minimal severity. Even so, following a purported initial examination of JC on November 9, 2018, Memorial Medical, Portal, and Panella billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(viii)   On February 27, 2019, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police report further indicated that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of LR on March 4, 2019, Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ix)   On March 25, 2019, an Insured named CA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-impact, rear-end collision, and that CA's vehicle was drivable following the accident. The police report further indicated that CA was not injured and did not complain of any pain at the scene. In keeping with the fact that CA was not seriously injured, CA did not visit any hospital emergency room following the accident. To the extent that CA experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of CA on March 27, 2019, Serenity Medical, Hurtado-Hernandez, and Panella billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(x)   On September 27, 2019, an Insured named YM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that YM's vehicle was drivable following the accident. The police report further indicated that YM was not injured and did not complain of any pain at the scene. In keeping with the fact that YM was not seriously injured, YM did not visit any hospital emergency room following the accident.

To the extent that YM experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of YM on October 2, 2019, Serenity Medical, Hurtado-Hernandez, and Panella billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

55.    These are only representative examples. In the claims for initial examinations identified in Exhibits "1" - "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides routinely falsely represented that the Insureds presented with problems of either moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99203 or 99204, because examinations billable under CPT codes 99203 and 99204 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the laundry list of other Fraudulent Services that the Defendants purported to provide to the Insureds.

**(ii)    Misrepresentations Regarding "Comprehensive" or "Detailed" Physical Examinations**

56.    In addition, in the claims for initial examinations identified in Exhibits "1" - "6", when Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides billed GEICO for putative initial examinations, they made the following misrepresentations regarding the nature and extent of the physical examinations that Panella, Ravipati, Merced, and Diamantides provided to the Insureds:

29

(i)     When billing GEICO for putative initial examinations using CPT code 99203 in the claims identified in Exhibits "1" - "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the physicians who purported to conduct the examinations – namely Panella, Ravipati, Merced, and Diamantides – conducted "detailed" physical examinations of the Insureds who purportedly received the examinations.

(ii)    When billing GEICO for putative initial examinations using CPT code 99204 in the claims identified in Exhibits "1" – "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the physicians who purported to conduct the examinations – namely Panella, Ravipati, Merced, and Diamantides – conducted "comprehensive" physical examinations of the Insureds who purportedly received the examinations.

57.     In fact, with respect to the claims for initial examinations under CPT code 99203 that are identified in Exhibits "1" - "6", neither Panella, Ravipati, Merced, Diamantides, nor any other physician associated with the Clinic Defendants, ever conducted a "detailed" patient examination because: (i) pursuant to the CPT Assistant, a "detailed" physical examination required – among other things – that the physician performing the examination document an extended examination of the affected body areas and other symptomatic or related organ systems; but (ii) neither Panella, Ravipati, Merced, and Diamantides, nor any other physician associated the Clinic Defendants ever documented an extended examination of the Insureds' musculoskeletal systems or any of the Insureds' other systems.

58.     Additionally, with respect to the claims for initial examinations under CPT code 99204 that are identified in Exhibits "1" – "6", neither Panella, Ravipati, Merced, Diamantides, nor any other physician associated with the Clinic Defendants, ever conducted a "comprehensive" patient examination because: (i) pursuant to the

CPT Assistant, a "comprehensive" physical examination required – among other things – that the physician performing the examination document a general examination of multiple patient organ systems or a complete examination of a single patient organ system; but (ii) neither Panella, Ravipati, Merced, and Diamantides, nor any other physician associated with the Clinic Defendants ever documented a general examination of multiple patient organ systems or a complete examination of a single patient organ system.

59.     For example:

(i)     On September 22, 2015, Guardian Angel Health, Macuya-Horta, and Panella billed GEICO under CPT code 99203 for an initial examination of an Insured named WR that Panella purported to perform, and thereby represented that they had provided a "detailed" physical examination to WR. However, Panella did not document an extended examination of the musculoskeletal systems of WR despite the fact that – to the extent WR had any complaints at all as the result of their automobile accident – they were limited to minor musculoskeletal complaints.

(ii)    On April 12, 2016, Memorial Medical, Portal, and Panella billed GEICO under CPT code 99203 for an initial examination of an Insured named AV that Panella purported to perform, and thereby represented that they had provided a "detailed" physical examination to AV. However, Panella did not document an extended examination of the musculoskeletal systems of AV despite the fact that – to the extent AV had any complaints at all as the result of their automobile accident – they were limited to minor musculoskeletal complaints.

(iii)   On February 27, 2017, Metropolitan Medical, Rodriguez-Lorenzo, and Panella billed GEICO under CPT code 99203 for an initial examination of an Insured named AF that Panella purported to perform, and thereby represented that they had provided a "detailed" physical examination to AF. However, Panella did not document an extended examination of the musculoskeletal systems of AF despite the fact that – to the extent AF had any complaints at all as the result of their automobile accident – they were limited to minor musculoskeletal complaints.

(iv)    On October 4, 2017, Memorial Medical, Portal, and Panella billed GEICO under CPT code 99204 for an initial examination of an Insured named AM that Panella purported to perform, and thereby represented that they had provided a "comprehensive" physical examination to AM. However, Panella did not document findings with respect to at least eight of the Insured's organ systems, nor did he document a "complete" examination of the Insured's musculoskeletal systems or any of the Insured's other organ systems.

(v)     On April 19, 2018, Best Care Medical, Consuegra, Diamantides, and Panella billed GEICO under CPT code 99203 for an initial examination of an Insured named KG that Diamantides purported to perform, and thereby represented that they had provided a "detailed" physical examination to KG. However, Diamantides did not document an extended examination of the musculoskeletal systems of KG despite the fact that – to the extent KG had any complaints at all as the result of their automobile accident – they were limited to minor musculoskeletal complaints.

(vi)    On October 17, 2018, Best Care Medical, Consuegra, and Panella billed GEICO under CPT code 99204 for an initial examination of an Insured named LL that Panella purported to perform, and thereby represented that they had provided a "comprehensive" physical examination to LL. However, Panella did not document findings with respect to at least eight of the Insured's organ systems, nor did he document a "complete" examination of the Insured's musculoskeletal systems or any of the Insured's other organ systems.

(vii)   On June 26, 2018, Metropolitan Medical, Rodriguez-Lorenzo, and Panella billed GEICO under CPT code 99204 for an initial examination of an Insured named MP that Panella purported to perform, and thereby represented that they had provided a "comprehensive" physical examination to MP.  However, Panella did not document findings with respect to at least eight of the Insured's organ systems, nor did he document a "complete" examination of the Insured's musculoskeletal systems or any of the Insured's other organ systems.

(viii)  On June 25, 2019, Guardian Angel Health, Macuya-Horta, Panella, and Ravipati billed GEICO under CPT code 99204 for an initial examination of an Insured named LC that Ravipati purported to perform, and thereby represented that they had provided a "comprehensive" physical examination to LC.  However, Ravipati did not document findings with respect to at least eight of the Insured's organ systems, nor did he

document a "complete" examination of the Insured's musculoskeletal systems or any of the Insured's other organ systems.

(ix)   On May 13, 2019, Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati billed GEICO under CPT code 99203 for an initial examination of an Insured named YZ that Ravipati purported to perform, and thereby represented that they had provided a "detailed" physical examination to YZ. However, Ravipati did not document an extended examination of the musculoskeletal systems of YZ despite the fact that – to the extent YZ had any complaints at all as the result of their automobile accident – they were limited to minor musculoskeletal complaints.

(x)   On September 11, 2019, Gulf Bay Care, Linares-Chi, Panella, and Ravipati billed GEICO under CPT code 99203 for an initial examination of an Insured named MF that Ravipati purported to perform, and thereby represented that they had provided a "detailed" physical examination to MF. However, Ravipati did not document an extended examination of the musculoskeletal systems of MF despite the fact that – to the extent MF had any complaints at all as the result of their automobile accident – they were limited to minor musculoskeletal complaints.

60.   These are only representative examples. In the claims for initial examinations identified in Exhibits "1" - "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides routinely falsely represented that they provided either "detailed" or "comprehensive" physical examinations to the Insureds in order to create a false basis for their charges for the examinations under CPT codes 99203 or 99204, because examinations billable under CPT codes 99203 and 99204 are reimbursable at higher rates than examinations that are neither "detailed" nor "comprehensive".

(iii)   **Misrepresentations Regarding the Extent of Medical Decision-Making**

61.   Moreover, in the claims for initial examinations identified in Exhibits "1" - "6", when Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants,

33

Ravipati, Merced, and Diamantides billed GEICO for putative initial examinations, they made the following misrepresentations regarding the extent of medical decision-making that was required in connection with the examinations:

(i)     When billing GEICO for putative initial examinations using CPT code 99203 in the claims identified in Exhibits "1" - "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the physicians who purported to conduct the examinations – namely Panella, Ravipati, Merced, and Diamantides – engaged in some legitimate, low complexity medical decision-making in connection with the examinations.

(ii)    When billing GEICO for putative initial examinations using CPT code 99204 in the claims identified in Exhibits "1" – "6", Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the physician who purported to conduct the examinations – namely Panella, Ravipati, Merced, and Diamantides – engaged in some legitimate, moderate complexity medical decision-making in connection with the examinations.

62.     In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

63.     For example, in the claims for initial examinations identified in Exhibits "1" - "6": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) Panella, Ravipati, Merced, and Diamantides did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and instead – at the direction of the respective Clinic Defendants and Clinic Owner Defendants – provided a substantially

similar, pre-determined, and phony sprain/strain or similar soft tissue injury "diagnosis" for every Insured.

64.    For example:

(i)    On May 29, 2015, an Insured named ZM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, rear-end collision, and that ZM's vehicle was drivable following the accident. The police report further indicated that ZM was not injured and did not complain of any pain at the scene. In keeping with the fact that ZM was not seriously injured, ZM did not visit any hospital emergency room following the accident. To the extent that ZM experienced any health problems at all as the result of the accident, they were of low or minimal severity. On June 3, 2015, Panella purported to conduct an initial examination of ZM at Guardian Angel Health. To the extent that Panella performed the examination in the first instance, Panella did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Panella did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Panella provided ZM with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither ZM's presenting problems, nor the treatment plan provided to ZM by Guardian Angel Health, Macuya-Horta, and Panella presented any risk of significant complications, morbidity, or mortality. To the contrary, ZM did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Guardian Angel Health, Macuya-Horta, and Panella consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to ZM. Even so, Guardian Angel Health, Macuya-Horta, and Panella billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Panella engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)    On October 15, 2016, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that JC was not injured and did not complain of any pain at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that

JC experienced any health problems at all as the result of the accident, they were of low or minimal severity. On October 19, 2016, Ravipati purported to conduct an initial examination of JC at Best Care Medical. To the extent that Ravipati performed the examination in the first instance, Ravipati did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ravipati did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ravipati provided JC with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JC's presenting problems, nor the treatment plan provided to JC by Best Care Medical, Consuegra, Ravipati, and Panella presented any risk of significant complications, morbidity, or mortality. To the contrary, JC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Care Medical, Consuegra, Ravipati, and Panella consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JC. Even so, Best Care Medical, Consuegra, Ravipati, and Panella billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Ravipati engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iii)   On August 4, 2017, an Insured named GM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, rear-end collision, and that GM's vehicle was drivable following the accident. The police report further indicated that GM was not injured and did not complain of any pain at the scene. In keeping with the fact that GM was not seriously injured, GM did not visit any hospital emergency room following the accident. To the extent that GM experienced any health problems at all as the result of the accident, they were of low or minimal severity. On August 10, 2017, Fossi purported to conduct an initial examination of GM at Gulf Bay Care. To the extent that Fossi performed the examination in the first instance, Fossi did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fossi did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fossi provided GM with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither GM's presenting problems, nor the treatment plan provided to GM by Gulf Bay Care, Y. Rodriguez, and Fossi presented any risk of significant complications, morbidity, or

mortality. To the contrary, GM did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Gulf Bay Care, Y. Rodriguez, and Fossi consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to GM. Even so, Gulf Bay Care, Y. Rodriguez, and Fossi billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Fossi engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)   On October 20, 2017, an Insured named IG was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that IG's vehicle was drivable following the accident. The police report further indicated that IG was not injured and did not complain of any pain at the scene. In keeping with the fact that IG was not seriously injured, IG did not visit any hospital emergency room following the accident. To the extent that IG experienced any health problems at all as the result of the accident, they were of low or minimal severity. On October 24, 2017, Merced purported to conduct an initial examination of IG at Metropolitan Medical. To the extent that Merced performed the examination in the first instance, Merced did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Merced did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Merced provided IG with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither IG's presenting problems, nor the treatment plan provided to IG by Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced presented any risk of significant complications, morbidity, or mortality. To the contrary, IG did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to IG. Even so, Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Merced engaged in some legitimate, low complexity medical decision-making during the purported examination.

(v)   On April 25, 2018, an Insured named LC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LC's vehicle was drivable

following the accident. The police report further indicated that LC was not injured and did not complain of any pain at the scene. In keeping with the fact that LC was not seriously injured, LC did not visit any hospital emergency room following the accident. To the extent that LC experienced any health problems at all as the result of the accident, they were of low or minimal severity. On April 26, 2018, Ravipati purported to conduct an initial examination of LC at Gulf Bay Care. To the extent that Ravipati performed the examination in the first instance, Ravipati did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ravipati did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ravipati provided LC with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither LC's presenting problems, nor the treatment plan provided to LC by Gulf Bay Care, Y. Rodriguez, Panella, and Ravipati presented any risk of significant complications, morbidity, or mortality. To the contrary, LC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Gulf Bay Care, Y. Rodriguez, Panella, and Ravipati consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to LC. Even so, Gulf Bay Care, Y. Rodriguez, Panella, and Ravipati billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Ravipati engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vi)   On September 12, 2018, an Insured named RB was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RB's vehicle was drivable following the accident. The police report further indicated that RB was not injured and did not complain of any pain at the scene. In keeping with the fact that RB was not seriously injured, RB did not visit any hospital emergency room following the accident. To the extent that RB experienced any health problems at all as the result of the accident, they were of low or minimal severity. On September 18, 2018, Merced purported to conduct an initial examination of RB at Metropolitan Medical. To the extent that Merced performed the examination in the first instance, Merced did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Merced did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Merced provided RB with the same, phony, list of soft tissue injury

38

"diagnoses" that he provided to virtually every other Insured. Furthermore, neither RB's presenting problems, nor the treatment plan provided to RB by Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced presented any risk of significant complications, morbidity, or mortality. To the contrary, RB did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to RB. Even so, Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Merced engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vii)   On November 8, 2018, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that although JC complained of pain, JC refused medical attention at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as the result of the accident, they were of low or minimal severity. On November 9, 2018, Panella purported to conduct an initial examination of JC at Memorial Medical. To the extent that Panella performed the examination in the first instance, Panella did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Panella did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Panella provided JC with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JC's presenting problems, nor the treatment plan provided to JC by Memorial Medical, Portal, and Panella presented any risk of significant complications, morbidity, or mortality. To the contrary, JC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Memorial Medical, Portal, and Panella consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JC. Even so, Memorial Medical, Portal, and Panella billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Panella engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(viii)   On February 27, 2019, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police report further indicated that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as the result of the accident, they were of low or minimal severity. On March 4, 2019, Ravipati purported to conduct an initial examination of LR at Serenity Medical. To the extent that Ravipati performed the examination in the first instance, Ravipati did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ravipati did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ravipati provided LR with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither AA's presenting problems, nor the treatment plan provided to LR by Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati presented any risk of significant complications, morbidity, or mortality. To the contrary, LR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to LR. Even so, Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Ravipati engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ix)   On March 25, 2019, an Insured named CA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-impact, rear-end collision, and that CA's vehicle was drivable following the accident. The police report further indicated that CA was not injured and did not complain of any pain at the scene. In keeping with the fact that CA was not seriously injured, CA did not visit any hospital emergency room following the accident. To the extent that CA experienced any health problems at all as the result of the accident, they were of low or minimal severity. On March 27, 2019, Panella purported to conduct an initial examination of CA at Serenity Medical. To the extent that Panella performed the examination in the first instance, Panella did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in

connection with the examination. Moreover, Panella did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Panella provided CA with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither CA's presenting problems, nor the treatment plan provided to CA by Serenity Medical, Hurtado-Hernandez, and Panella presented any risk of significant complications, morbidity, or mortality. To the contrary, CA did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Serenity Medical, Hurtado-Hernandez, and Panella consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to CA. Even so, Serenity Medical, Hurtado-Hernandez, and Panella billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Panella engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(x)    On September 27, 2019, an Insured named AG was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AG's vehicle was drivable following the accident. The police report further indicated that AG was not injured and did not complain of any pain at the scene. In keeping with the fact that AG was not seriously injured, AG did not visit any hospital emergency room following the accident. To the extent that AG experienced any health problems at all as the result of the accident, they were of low or minimal severity. On October 2, 2019, Panella purported to conduct an initial examination of AG at Serenity Medical. To the extent that Panella performed the examination in the first instance, Panella did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Panella did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Panella provided AG with the same, phony, list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither AG's presenting problems, nor the treatment plan provided to AG by Serenity Medical, Hurtado-Hernandez, and Panella presented any risk of significant complications, morbidity, or mortality. To the contrary, AG did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Serenity Medical, Hurtado-Hernandez, and Panella consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AG. Even so, Serenity Medical, Hurtado-Hernandez, and Panella billed GEICO for the initial

examination using CPT code 99204, and thereby falsely represented that Panella engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

65.   In keeping with the fact that these putative "diagnoses" were pre-determined and phony, Panella, Ravipati, and Merced – at the direction of the respective Clinic Defendants and Clinic Owner Defendants – frequently issued substantially identical, phony "diagnoses", on or about the same date, to two or more Insureds who had been involved in a the same underlying accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

66.   For example:

(i)   On May 29, 2015, three Insureds – EG, JG, and ZM – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Guardian Angel Health for initial examinations by Panella on the exact same date, June 3, 2015. EG, JG, and ZM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EG, JG, and ZM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Guardian Angel Health and Panella – at the direction of Macuya-Horta – provided EG, JG, and ZM with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all of them.

(ii)   On September 30, 2017, two Insureds – VM and JM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Memorial Medical for initial examinations by Panella on the exact same date, October 4, 2017. VM and JM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that VM and JM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Memorial Medical and Panella – at the direction of Portal

– provided VM and JM with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iii)     On February 25, 2018, two Insureds – EV and KR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Metropolitan Medical for initial examinations by Merced on the <u>exact same date</u>, March 5, 2018. EV and KR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EV and KR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Metropolitan Medical and Merced – at the direction of Rodriguez-Lorenzo – provided EV and KR with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iv)     On July 11, 2018, two Insureds – YG and ER – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Memorial Medical for initial examinations by Panella on the <u>exact same date</u>, July 16, 2018. YG and ER were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that YG and ER suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Memorial Medical and Panella – at the direction of Portal – provided YG and ER with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(v)     On July 27, 2018, two Insureds – MC and JS – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Best Care Medical for initial examinations by Panella on the <u>exact same date</u>, August 1, 2018. MC and JS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MC and JS suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Care Medical and Panella – at the direction of Consuegra – provided MC and JS with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(vi)     On February 15, 2019, two Insureds – LB and RM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Best Care Medical for initial examinations by Panella on the <u>exact same date</u>, February 20, 2019. LB and RM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that LB and RM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Care Medical and Panella – at the direction of Consuegra – provided LB and RM with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(vii)    On February 27, 2019, two Insureds – FE and LR– were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Serenity Medical for initial examinations by Ravipati on the <u>exact same date</u>, March 4, 2019. FE and LR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that FE and LR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Serenity Medical and Ravipati – at the direction of Hernandez – provided FE and LR with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(viii)   On March 10, 2019, two Insureds – MO and YR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Serenity Medical for initial examinations by Panella on the <u>exact same date</u>, March 11, 2019. MO and YR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MO and YR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Serenity Medical and Panella – at the direction of Hernandez – provided MO and YR with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(ix)     On July 30, 2019, two Insureds – GF and DG – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Gulf Bay Medical for initial examinations by Ravipati on the <u>exact same date</u>, August 1, 2019. GF and DG were different ages, in

different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that GF and DG suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Gulf Bay Care and Ravipati – at the direction of Linares-Chi – provided GF and DG with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(x)     On August 2, 2019, two Insureds – DV and MA – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Gulf Bay Medical for initial examinations by Panella on the <u>exact same date</u>, August 7, 2019. DV and MA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that DV and MA suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Gulf Bay Care and Panella – at the direction of Linares-Chi – provided DV and MA with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xi)    On August 4, 2019, two Insureds – EF and YV– were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Metropolitan Medical for initial examinations by Panella on the <u>exact same date</u>, August 6, 2019. EF and YV were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EF and YV suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Metropolitan Medical and Panella – at the direction of Rodriguez-Lorenzo – provided EF and YV with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xii)   On August 19, 2019, two Insureds – GC and KL – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Best Care Medical for initial examinations by Panella on the <u>exact same date</u>, August 20, 2019. GC and KL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that GC and KL suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial

examinations, Best Care Medical and Panella – at the direction of Consuegra – provided GC and KL with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xiii)   On August 23, 2019, two Insureds – FB and MM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Serenity Medical for initial examinations by Ravipati on the <u>exact same date</u>, August 26, 2019. FB and MM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that FB and MM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Serenity Medical and Ravipati – at the direction of Hernandez – provided FB and MM with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xiv)   On September 4, 2019, two Insureds – AP and MR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Serenity Medical for initial examinations by Panella on the <u>exact same date</u>, September 5, 2019. AP and MR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AP and MR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Serenity Medical and Panella – at the direction of Hernandez – provided AP and MR with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xv)   On September 27, 2019, <u>three</u> Insureds – JL, YL, and WJ – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Serenity Medical for initial examinations by Panella on the <u>exact same date</u>, October 2, 2019. JL, YL, and WJ were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JL, YL, and WJ suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Serenity Medical and Panella – at the direction of Hernandez – provided JL, YL, and WJ with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary

treatment to all of them.

67.     Based on these phony and pre-determined soft tissue injury "diagnoses",
virtually every Insured was directed to return to one of the Clinic Defendants three to
four times each week for medically unnecessary "physical therapy", which was
performed – to the extent that it was performed at all – by unsupervised massage
therapists, including: (i) Soto, Morales, Santiago, and Gonzalez at Best Care Medical;
(ii) C. Hernandez, Soto, and Gonzalez at Gulf Bay Care; (iii) Diaz and Huice-Sosa at
Memorial Medical; (iv) Oliva, Perez, De Dios, Silva, and Sosa at Metropolitan
Medical; (v) Morales and Gonzales at Serenity Medical and (vi) Torres, Lima, and
Lopez at Guardian Angel Health.

68.     The false "diagnoses" contained within the initial examination reports
were included to give the false impression that the initial examinations entailed some
legitimate medical decision-making, to create a false basis for the charges under CPT
codes 99203 and 99204, and to create a false justification for the other Fraudulent
Services that the Defendants purported to provide to the Insureds.

69.     In the claims for initial examinations identified in Exhibits "1" – "6",
Panella, Fossi, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced,
and Diamantides routinely fraudulently misrepresented that the examinations were
lawfully provided and eligible for PIP reimbursement, when in fact they were neither
lawfully provided nor reimbursable, because:

    (i)     the putative examinations were illusory, with outcomes that were pre-
            determined to result in substantially-identical, phony "diagnoses" and

treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)    the Clinic Defendants never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they unlawfully were operated without legitimate medical directors.

70.    In this context, Panella – who purported to serve as the "medical director" at the Clinic Defendants – did not, and could not have, "[c]onduct[ed] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful." See Fla. Stat. § 400.9935(1). Had Panella done so, he would have observed and put a stop to these fraudulent and unlawful charges for initial examinations.

71.    Likewise, Fossi – who purported to serve as the "medical director" at Gulf Bay Care prior to Panella – did not, and could not have, "[c]onduct[ed] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful." See Fla. Stat. § 400.9935(1). Had Fossi done so, he would have observed and put a stop to these fraudulent and unlawful charges for initial examinations.

## 2.    The Fraudulent Claims for Follow-Up Examinations

72.    In addition to the fraudulent initial examinations, most of the Insureds in the claims identified in Exhibits "1" - "6" purportedly received multiple, fraudulent follow-up examinations at the respective Clinic Defendants, with:

(i)    Panella, Ravipati, and Diamantides purporting to personally perform or directly supervise a substantial majority of the follow-up examinations at Best Care Medical;

(ii)   Ravipati and Diamantides purporting to personally perform or directly supervise a substantial majority of the follow-up examinations at Gulf Bay Care;

(iii)   Panella purporting to personally perform or directly supervise a substantial majority of the follow-up examinations at Memorial Medical;

(iv)   Merced purporting to personally perform or directly supervise a substantial majority of the follow-up examinations at Metropolitan Medical; and

(v)   Panella and Ravipati purporting to personally perform or directly supervise a substantial majority of the follow-up examinations at Serenity Medical and Guardian Angel Health.

73.   The purported follow-up examinations then were billed to GEICO in the following manner:

(i)   In the claims identified in Exhibit "1", Best Care Medical, Consuegra, Panella, Ravipati,  and Diamantides billed GEICO under CPT codes 99213, 99214, or 99215 for each follow-up examination that Panella, Ravipati, and Diamantides purportedly provided at Best Care Medical.

(ii)   In the claims identified in Exhibit "2", Gulf Bay Care, Y. Rodriguez, Linares-Chi, Panella, Fossi, Ravipati, and Diamantides billed GEICO under CPT codes 99213 or 99214 for each follow-up examination that Ravipati and Diamantides purportedly provided at Gulf Bay Care.

(iii)   In the claims identified in Exhibit "3", Memorial Medical, Portal, Huice-Sosa, and Panella billed GEICO under CPT codes 99213, 99214, or 99215 for each follow-up examination that Panella purportedly provided at Memorial Medical.

(iv)   In the claims identified in Exhibit "4", Metropolitan Medical, Rodriguez-Lorenzo, Panella, and Merced billed GEICO under CPT codes 99213, 99214, or 99215 for each follow-up examination that Merced purportedly provided at Metropolitan Medical.

(v)   In the claims identified in Exhibit "5", Serenity Medical, Hurtado-Hernandez, Panella, and Ravipati billed GEICO CPT codes 99213, 99214, or 99215 for each follow-up examination that Panella and Ravipati purportedly provided at Serenity Medical.

(vi)   In the claims identified in Exhibit "6", Guardian Angel Health, Macuya-Horta, Panella and Ravipati billed GEICO CPT codes 99213, 99214, or 99215 for each follow-up examination that Panella and Ravipati purportedly provided at Guardian Angel Health.

74.   Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99213 to bill for a follow-up examination represented – among other things – that: (i) the patient presented with problems of low to moderate severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took an "expanded problem focused" patient history; (b) conducted an "expanded problem focused physical examination"; and (c) engaged in medical decision-making of "low complexity".

75.   Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99214 to bill for a follow-up examination represented – among other things – that: (i) the patient presented with problems of moderate to high severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took a "detailed" patient history; (b) conducted a "detailed" physical examination; and (c) engaged in medical decision-making of "moderate complexity".

76.   Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99215 to bill for a follow-up examination represented – among other things – that: (i) the patient presented with problems of moderate to high severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took a "comprehensive" patient history; (b) conducted a "comprehensive" physical examination; and (c) engaged in medical decision-making of "high complexity".

77.     As set forth below, the charges for the follow-up examinations identified in Exhibits "1" – "6" misrepresented the nature, extent, and results of the follow-up examinations.

**(i)     Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

78.     To the extent that the Insureds in the claims identified in Exhibits "1" - "6" suffered any injuries at all in their automobile accidents, the injuries almost always were minor soft tissue injuries such as sprains and strains, which were of low or minimal severity, even at their onset.

79.     Minor soft tissue injuries such as strains and sprains virtually always resolve after a short course of conservative treatment or no treatment at all. By the time the Insureds in the claims identified in Exhibits "1" - "6" presented for their putative follow-up examinations – typically weeks after their minor accidents – the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents, or else their presenting problems were minimal.

80.     Even so, in the claims for the follow-up examinations identified in Exhibits "1" - "6", Panella, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides made the following misrepresentations:

(i)     When billing GEICO for putative follow-up examinations using CPT code 99213 in the claims identified in Exhibits "1" – "6", Panella, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the Insureds presented with problems of low to moderate severity, when in fact the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

(ii)   When billing GEICO for putative follow-up examinations using CPT code 99214 in the claims identified in Exhibits "1" – "6", Panella, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

(iii)  When billing GEICO for putative follow-up examinations using CPT code 99215 in the claims identified in Exhibits "1", and "3" –" 6", Panella, Best Care Medical, Consuegra, Memorial Medical, Portal, Huice-Sosa, Metropolitan Medical, Rodriguez-Lorenzo, Serenity Medical, Hurtado-Hernandez, Guardian Angel Health, Macuya-Horta, Ravipati, Merced, and Diamantides falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

81.   For example:

(i)   On May 29, 2015, an Insured named ZM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, rear-end collision, and that ZM's vehicle was drivable following the accident. The police report further indicated that ZM was not injured and did not complain of any pain at the scene. In keeping with the fact that ZM was not seriously injured, ZM did not visit any hospital emergency room following the accident. To the extent that ZM experienced any health problems at all as the result of the accident, they were of low or minimal severity at the outset, and had completely resolved within two to three months of the accident. Even so, following a purported follow-up examination of ZM on October 6, 2015 – more than four months after the accident – Guardian Angel Health, Macuya-Horta, and Panella billed GEICO for the follow-up examination using CPT code 99214 and thereby falsely represented that ZM presented with problems of moderate to high severity.

(ii)  On May 12, 2017, an Insured named AL was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, and that AL's vehicle was drivable following the accident. The police report further indicated that AL was not injured and did not complain of any pain at the scene. In keeping with the fact that AL was not seriously injured, AL did not visit any hospital emergency room following the accident. To the extent that AL

experienced any health problems at all as the result of the accident, they were of low or minimal severity at the outset, and had completely resolved within two to three months of the accident. Even so, following a purported follow-up examination of AL on August 22, 2017 – more than three months after the accident – Guardian Angel Health, Macuya-Horta, and Panella billed GEICO for the follow-up examination using CPT code 99214 and thereby falsely represented that AL presented with problems of moderate to high severity.

(iii)    On August 4, 2017, an Insured named GM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, rear-end collision, and that GM's vehicle was drivable following the accident. The police report further indicated that GM was not injured and did not complain of any pain at the scene. In keeping with the fact that GM was not seriously injured, GM did not visit any hospital emergency room following the accident. To the extent that GM experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported follow-up examination of GM on November 2, 2017, Gulf Bay Care, Y. Rodriguez, Panella, and Ravipati billed GEICO for the follow-up examination using CPT code 99214 and thereby falsely represented that GM presented with problems of moderate to high severity.

(iv)    On October 20, 2017, an Insured named IG was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that IG's vehicle was drivable following the accident. The police report further indicated that IG was not injured and did not complain of any pain at the scene. In keeping with the fact that IG was not seriously injured, IG did not visit any hospital emergency room following the accident. To the extent that IG experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported follow-up examination of IG on December 20, 2017, Metropolitan Medical, Rodriguez-Lorenzo, and Panella billed GEICO for the follow-up examination using CPT code 99214 and thereby falsely represented that IG presented with problems of moderate to high severity.

(v)    On April 16, 2018, an Insured named KR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that KR's vehicle was drivable following the accident. The police report further indicated that KR was not injured and did not complain of any pain at the scene. In keeping with the fact that KR was not seriously injured, KR did not visit

any hospital emergency room following the accident. To the extent that KR experienced any health problems at all as the result of the accident, they were of low or minimal severity at the outset, and had completely resolved within two to three months of the accident. Even so, following a purported follow-up examination of KR on July 19, 2018 – more than three months after the accident – Best Care Medical, Consuegra, Panella, and Diamantides billed GEICO for the follow-up examination using CPT code 99213 and thereby falsely represented that KR presented with problems of moderate severity.

(vi)    On July 31, 2018, an Insured named VP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that VP's vehicle was drivable following the accident. The police report further indicated that VP was not injured and did not complain of any pain at the scene. In keeping with the fact that VP was not seriously injured, VP did not visit any hospital emergency room following the accident. To the extent that VP experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported follow-up examination of VP on October 29, 2018, Memorial Medical, Portal, and Panella billed GEICO for the follow-up examination using CPT code 99214 and thereby falsely represented that VP presented with problems of moderate to high severity.

(vii)   On November 8, 2018, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that although JC complained of pain, JC refused medical attention at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as the result of the accident, they were of low or minimal severity at the outset, and had completely resolved within two to three months of the accident. Even so, following a purported follow-up examination of JC on January 14, 2019, Memorial Medical, Portal, and Panella billed GEICO for the follow-up examination using CPT code 99215 and thereby falsely represented that JC presented with problems of moderate to high severity.

(viii)  On February 27, 2019, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police report further indicated

that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as the result of the accident, they were of low or minimal severity at the outset, and had completely resolved within two to three months of the accident. Even so, following a purported follow-up examination of LR on June 5, 2019 – more than three months after the accident – Serenity Medical, Hurtado-Hernandez, and Panella billed GEICO for the follow-up examination using CPT code 99215 and thereby falsely represented that LR presented with problems of moderate to high severity.

(ix)    On March 25, 2019, an Insured named CA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-impact, rear-end collision, and that CA's vehicle was drivable following the accident. The police report further indicated that CA was not injured and did not complain of any pain at the scene. In keeping with the fact that CA was not seriously injured, CA did not visit any hospital emergency room following the accident. To the extent that CA experienced any health problems at all as the result of the accident, they were of low or minimal severity at the outset, and had completely resolved within two to three months of the accident. Even so, following a purported follow-up examination of CA on May 29, 2019 – more than four months after the accident – Serenity Medical, Hurtado-Hernandez, and Panella billed GEICO for the follow-up examination using CPT code 99215 and thereby falsely represented that CA presented with problems of moderate to high severity.

(x)    On June 15, 2019, an Insured named GM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that GM's vehicle was drivable following the accident. The police report further indicated that GM was not injured and did not complain of any pain at the scene. In keeping with the fact that GM was not seriously injured, GM did not visit any hospital emergency room following the accident. To the extent that GM experienced any health problems at all as the result of the accident, they were of low or minimal severity. Even so, following a purported follow-up examination of GM on September 18, 2019, Gulf Bay Care, Linares-Chi, Panella, and Diamantides billed GEICO for the follow-up examination using CPT code 99214 and thereby falsely represented that GM presented with problems of moderate to high severity.

82.     These are only representative examples. In the claims for follow-up examinations identified in Exhibits "1" - "6", Panella, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides routinely falsely represented that the Insureds presented with problems of either low to moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99213, 99214, or 99215, because examinations billable under CPT codes 99213, 99214, and 99215 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity; and (ii) create a false basis for the laundry list of other Fraudulent Services that the Defendants purported to provide to the Insureds.

### (ii)     Misrepresentations Regarding the Nature, Extent, and Results of the Follow-Up Examinations

83.     What is more, in the claims for follow-up examinations identified in Exhibits "1" - "6", neither Panella, Ravipati, Merced, and Diamantides, nor any other physician associated with the Clinic Defendants, ever took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

84.     Rather, following the purported follow-up examinations, Panella, Ravipati, Merced, and Diamantides – at the direction of the respective Clinic Defendants and Clinic Owner Defendants – simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) referred the Insureds for even more medically unnecessary physical therapy services, despite the fact that the

56

Insureds purportedly already had received extensive physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

85.    The phony "follow-up examinations" that Panella, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides purported to provide to the Insureds in the claims identified in Exhibits "1" - "6" therefore were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the examinations were prearranged to comport with the medically unnecessary treatment plan that was pre-determined for each Insured from the moment they walked into the respective Clinic Defendants' offices.

86.    In the claims for follow-up examinations identified in Exhibits "1" - "6", Panella, the Clinic Defendants, the Clinic Owner Defendants, Ravipati, Merced, and Diamantides routinely fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the putative examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)     the Clinic Defendants never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they unlawfully were operated without legitimate medical directors.

## 3.    The Fraudulent Claims for "Physical Therapy"

87.     In keeping with the fact that the purported "results" of the follow-up examinations were pre-determined, and had no legitimate connection to the Insureds' true medical circumstances or presentation:

(i)      the Clinic Owner Defendants, Clinic Defendants, Panella, Ravipati, Merced, and Diamantides caused virtually every Insured to receive two to five months of purported physical therapy treatments, typically beginning with daily physical therapy for the first two to three weeks of treatment, followed by physical therapy four times per week for the subsequent four weeks, followed by physical therapy three times a week thereafter; and

(ii)     the Clinic Owner Defendants, Clinic Defendants, Panella, Ravipati, Merced, and Diamantides caused virtually every Insured to receive substantially identical types of physical therapy services, including: (i) hot/cold packs; (ii) mechanical traction; (iii) electrical stimulation; (iv) contrast baths; (v) ultrasound therapy; (vi) therapeutic exercises; and (vii) neuromuscular reeducation. See Exhibits "1" – "6".

88.     In a legitimate clinical setting, each individual patient's physical therapy schedule, and the specific physical therapy modalities that will be used, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

89.     In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's individual treatment progress, as assessed during each patient's follow-up examinations and on an ongoing basis as they receive the physical therapy.

90.     By contrast, at each of the Clinic Defendants, the nature and extent of the physical therapy that each Insured purportedly received was pre-determined, and had no legitimate connection to the Insureds' individual circumstances, presentation, or progress through the Defendants' fraudulent treatment and billing protocols. The purported "physical therapy" provided through each of the Clinic Defendants to GEICO Insureds therefore was medically useless.

91.     Furthermore, in the claims for physical therapy services identified in Exhibits "1" - "6", the charges were fraudulent, unlawful, and non-reimbursable because the billing falsely represented that Panella had performed or directly supervised the services, when in fact the "physical therapy" services were performed – to the extent that they were performed at all – by unsupervised massage therapists associated with each of the Clinic Defendants, including: (i) Soto, Morales, Santiago, and Gonzalez at Best Care Medical; (ii) C. Hernandez, Soto, and Gonzalez at Gulf Bay Care; (iii) Diaz and Huice Sosa at Memorial Medical; (iv) Oliva, Perez, De Dios, Silva, and Sosa at Metropolitan Medical; (v) Morales and Gonzales at Serenity Medical and (vi) Torres, Lima, and Lopez at Guardian Angel Health.

## III.   The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

92.     To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of HCFA-1500 forms and treatment reports through the respective Clinic Defendants to GEICO, containing thousands of

individual charges, seeking payment for the Fraudulent Services that the Defendants

were not entitled to receive. In particular:

(i)     The Best Care Medical Defendants submitted or caused to be submitted thousands of HCFA-1500 forms, PIP charges, and treatment reports through Best Care Medical to GEICO;

(ii)    The Gulf Bay Care Defendants submitted or caused to be submitted thousands of HCFA-1500 forms, PIP charges, and treatment reports through Gulf Bay Care to GEICO;

(iii)   The Memorial Medical Defendants submitted or caused to be submitted thousands of HCFA-1500 forms, PIP charges, and treatment reports through Memorial Medical to GEICO;

(iv)    The Metropolitan Medical Defendants submitted or caused to be submitted thousands of HCFA-1500 forms, PIP charges, and treatment reports through Metropolitan Medical to GEICO;

(v)     The Serenity Medical Defendants submitted or caused to be submitted thousands of HCFA-1500 forms, PIP charges, and treatment reports through Serenity Medical to GEICO; and

(vi)    The Guardian Angel Health Defendants submitted or caused to be submitted thousands of HCFA-1500 forms, PIP charges, and treatment reports through Guardian Angel Health to GEICO.

93.     The claims that the Defendants submitted or caused to be submitted to

GEICO were false and misleading in the following, material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Clinic Defendants were in compliance with the Clinic Act and eligible to collect PIP Benefits in the first instance. In fact, the Clinic Defendants never were in compliance with the Clinic Act, and never were eligible to collect PIP Benefits, because they were operated without legitimate medical directors who legitimately fulfilled the statutory requirements applicable to clinic medical directors.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that

the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement, because: (a) they were medically unnecessary and provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; and (b) in the case of the physical therapy services, because they were provided by massage therapists, and because the resulting billing falsely represented that Panella had performed or directly supervised the services.

(iii)   The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)   The HCFA-1500 forms and treatment reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided, in order to increase the amount of reimbursement the Defendants could unlawfully obtain.

## IV.   The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

94.   The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO. Even so, the Defendants knowingly misrepresented and concealed facts related to the Clinic Defendants in an effort to prevent discovery: (i) that the Clinic Defendants lacked legitimate medical directors, and therefore were ineligible to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services

were provided – to the extent that they were provided at all – by unsupervised massage therapists, and therefore were not eligible for PIP reimbursement; and (iii) that the Fraudulent Services were medically unnecessary.

95.     GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $6,000,000.00.

96.     GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it commenced this action.

## FIRST CAUSE OF ACTION
### Against Best Care Medical, Gulf Bay Care, Memorial Medical, Metropolitan Medical, Serenity Medical, and Guardian Angel Health
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

97.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

98.     There is an actual case in controversy between GEICO and each of the Clinic Defendants regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

99.     The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because they unlawfully were operated in violation of the Clinic Act's medical director and operating requirements

100.   The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

101.   The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO for purported physical therapy because the underlying Fraudulent Services were not performed by individuals who actually were licensed to perform the pertinent services, or else constituted non-reimbursable massage.

102.   The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

103.   The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

104.   The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

105.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Best Care Medical, Gulf

Bay Care, Memorial Medical, Metropolitan Medical, Serenity Medical, and Guardian Angel Health have no right to receive payment for any pending bills submitted to GEICO.

### SECOND CAUSE OF ACTION
Against Consuegra and Panella
(Violation of RICO, 18 U.S.C. § 1962(c))

106.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

107.   Best Care Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

108.   Consuegra and Panella knowingly have conducted and/or participated, directly or indirectly, in the conduct of Best Care Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Best Care Medical was not eligible to receive under the No-Fault Law because: (i) Best Care Medical unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Best Care Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected

64

to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

109.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

110.    Best Care Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Consuegra and Panella operated Best Care Medical, inasmuch as Best Care Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Best Care Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Best Care Medical Defendants continue to attempt collection on the fraudulent billing submitted through Best Care Medical to the present day.

111.    Best Care Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Best Care Medical in

pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

112.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,550,000.00 pursuant to the fraudulent bills submitted through the Best Care Medical enterprise.

113.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

114.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

115.   Best Care Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

116.   Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez are or were employed by or associated with the Best Care Medical enterprise.

117.   Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Best Care Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail

fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Best Care Medical was not eligible to receive under the No-Fault Law because: (i) Best Care Medical unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Best Care Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

118.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

119.    Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez knew of, agreed to and acted in furtherance of the common and overall

objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

120.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,550,000.00 pursuant to the fraudulent bills submitted through the Best Care Medical enterprise.

121.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
Against the Best Care Medical Defendants
(Under Fla. Stat. 501.201 et. seq.)

122.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

123.   The Best Care Medical Defendants are actively engaged in trade and commerce in the State of Florida.

124.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

125.   The Best Care Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

126.   The bills and supporting documents submitted or caused to be submitted by the Best Care Medical Defendants to GEICO were fraudulent in that they misrepresented: (i) Best Care Medical's eligibility to collect PIP Benefits in the first

instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

127.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of the Best Care Medical Defendants has been materially injurious to GEICO and its Insureds.

128.     The conduct of the Best Care Medical Defendants was the actual and proximate cause of the damages sustained by GEICO.

129.     The Best Care Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $1,550,000.00.

130.     By reason of the Best Care Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTH CAUSE OF ACTION**
**Against the Best Care Medical Defendants**
**(Common Law Fraud)**

131.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

132.     The Best Care Medical Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Best Care Medical for the Fraudulent Services.

133.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Best Care Medical was in compliance with the Clinic Act and eligible to collect PIP Benefits in the first instance, when in fact Best Care Medical never was in compliance with the Clinic Act, and never was eligible to collect PIP Benefits, because it was operated without a legitimate medical director; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

134.   The Best Care Medical Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Best Care Medical that were not reimbursable.

135.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,550,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Best Care Medical Defendants through Best Care Medical.

136.   The Best Care Medical Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

137.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**Against the Best Care Medical Defendants**
**(Unjust Enrichment)**

138.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-96 above.

139.   As set forth above, the Best Care Medical Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

140.   When GEICO paid the bills and charges submitted or caused to be submitted by the Best Care Medical Defendants through Best Care Medical, it reasonably believed that it was legally obligated to make such payments based on the Best Care Medical Defendants' improper, unlawful, and/or unjust acts.

141.   The Best Care Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Best Care Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

142.   The Best Care Medical Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

143.   By reason of the above, the Best Care Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,550,000.00.

**SEVENTH CAUSE OF ACTION**
Against Y. Rodriguez, Linares-Chi, and Panella
(Violation of RICO, 18 U.S.C. § 1962(c))

144.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

145.   Gulf Bay Care is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

146.   Y. Rodriguez, Linares-Chi, and Panella knowingly have conducted and/or participated, directly or indirectly, in the conduct of Gulf Bay Care's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Gulf Bay Care was not eligible to receive under the No-Fault Law because: (i) Gulf Bay Care unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Gulf Bay Care Defendants, rather than to treat or otherwise benefit the Insureds who purportedly

72

were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

147.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

148.  Gulf Bay Care's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Y. Rodriguez, Linares-Chi, and Panella operated Gulf Bay Care, inasmuch as Gulf Bay Care was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Gulf Bay Care to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Gulf Bay Care Defendants continue to attempt collection on the fraudulent billing submitted through Gulf Bay Care to the present day.

149.  Gulf Bay Care is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Gulf Bay Care in

pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

150.  GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills submitted through the Gulf Bay Care enterprise.

151.  By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Against Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

152.  GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

153.  Gulf Bay Care is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

154.  Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez are or were employed by or associated with the Gulf Bay Care enterprise.

155.  Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Gulf Bay Care's affairs through a pattern of racketeering activity consisting of repeated violations of the

74

federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Gulf Bay Care was not eligible to receive under the No-Fault Law because: (i) Gulf Bay Care unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Gulf Bay Care Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

156.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

157.   Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers

of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

158. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills submitted through the Gulf Bay Care enterprise.

159. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
Against the Gulf Bay Care Defendants
(Under Fla. Stat. 501.201 et. seq.)

160. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

161. The Gulf Bay Care Defendants are actively engaged in trade and commerce in the State of Florida.

162. GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

163. The Gulf Bay Care Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

164. The bills and supporting documents submitted or caused to be submitted by the Gulf Bay Care Defendants to GEICO were fraudulent in that they misrepresented: (i) Gulf Bay Care's eligibility to collect PIP Benefits in the first

instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

165.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of the Gulf Bay Care Defendants has been materially injurious to GEICO and its Insureds.

166.   The conduct of the Gulf Bay Care Defendants was the actual and proximate cause of the damages sustained by GEICO.

167.   The Gulf Bay Care Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $1,000,000.00.

168.   By reason of the Gulf Bay Care Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

## TENTH CAUSE OF ACTION
### Against the Gulf Bay Care Defendants
### (Common Law Fraud)

169.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

170.   The Gulf Bay Care Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Gulf Bay Care for the Fraudulent Services.

171.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Gulf Bay Care was in compliance with the Clinic Act and eligible to collect PIP Benefits in the first instance, when in fact Gulf Bay Care never was in compliance with the Clinic Act, and never was eligible to collect PIP Benefits, because it was operated without a legitimate medical director; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

172.   The Gulf Bay Care Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Gulf Bay Care that were not reimbursable.

173.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Gulf Bay Care Defendants through Gulf Bay Care.

174.  The Gulf Bay Care Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

175.  Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### Against the Gulf Bay Care Defendants
### (Unjust Enrichment)

176.  GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-96 above.

177.  As set forth above, the Gulf Bay Care Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

178.  When GEICO paid the bills and charges submitted or caused to be submitted by the Gulf Bay Care Defendants through Gulf Bay Care, it reasonably believed that it was legally obligated to make such payments based on the Gulf Bay Care Defendants' improper, unlawful, and/or unjust acts.

179.  The Gulf Bay Care Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Gulf Bay Care Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

180.  The Gulf Bay Care Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

181.   By reason of the above, the Gulf Bay Care Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,000,000.00.

## TWELFTH CAUSE OF ACTION
### Against Portal, Huice-Sosa, and Panella
### (Violation of RICO, 18 U.S.C. § 1962(c))

182.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

183.   Memorial Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

184.   Portal, Huice-Sosa, and Panella knowingly have conducted and/or participated, directly or indirectly, in the conduct of Memorial Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Memorial Medical was not eligible to receive under the No-Fault Law because: (i) Memorial Medical unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Memorial Medical Defendants, rather than to treat or otherwise benefit the Insureds

who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

185.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

186.   Memorial Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Portal, Huice-Sosa, and Panella operated Memorial Medical, inasmuch as Memorial Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Memorial Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Memorial Medical Defendants continue to attempt collection on the fraudulent billing submitted through Memorial Medical to the present day.

187.   Memorial Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Memorial Medical in

pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

188.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills submitted through the Memorial Medical enterprise.

189.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### Against Portal, Panella, Diaz, and Huice Sosa
### (Violation of RICO, 18 U.S.C. § 1962(d))

190.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

191.    Memorial Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

192.    Portal, Panella, Diaz, and Huice Sosa are or were employed by or associated with the Memorial Medical enterprise.

193.    Portal, Panella, Diaz, and Huice Sosa knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Memorial Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that

Memorial Medical was not eligible to receive under the No-Fault Law because: (i) Memorial Medical unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Memorial Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

194.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

195.   Portal, Panella, Diaz, and Huice Sosa knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

196.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills submitted through the Memorial Medical enterprise.

197.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
### Against the Memorial Medical Defendants
### (Under Fla. Stat. 501.201 et. seq.)

198.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

199.   The Memorial Medical Defendants are actively engaged in trade and commerce in the State of Florida.

200.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

201.   The Memorial Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

202.   The bills and supporting documents submitted or caused to be submitted by the Memorial Medical Defendants to GEICO were fraudulent in that they misrepresented: (i) Memorial Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO;

(iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

203. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the Memorial Medical Defendants has been materially injurious to GEICO and its Insureds.

204. The conduct of the Memorial Medical Defendants was the actual and proximate cause of the damages sustained by GEICO.

205. The Memorial Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $1,000,000.00.

206. By reason of the Memorial Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTEENTH CAUSE OF ACTION**
**Against the Memorial Medical Defendants**
**(Common Law Fraud)**

207. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

208. The Memorial Medical Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Memorial Medical for the Fraudulent Services.

209. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Memorial Medical

85

was in compliance with the Clinic Act and eligible to collect PIP Benefits in the first instance, when in fact Memorial Medical never was in compliance with the Clinic Act, and never was eligible to collect PIP Benefits, because it was operated without a legitimate medical director; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

210.   The Memorial Medical Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Memorial Medical that were not reimbursable.

211.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Memorial Medical Defendants through Memorial Medical.

212.   The Memorial Medical Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

213.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
Against the Memorial Medical Defendants
(Unjust Enrichment)

214.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-96 above.

215.   As set forth above, the Memorial Medical Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

216.   When GEICO paid the bills and charges submitted or caused to be submitted by the Memorial Medical Defendants through Memorial Medical, it reasonably believed that it was legally obligated to make such payments based on the Memorial Medical Defendants' improper, unlawful, and/or unjust acts.

217.   The Memorial Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Memorial Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

218.   The Memorial Medical Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

219.   By reason of the above, the Memorial Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,000,000.00.

## SEVENTEENTH CAUSE OF ACTION
### Against Rodriguez-Lorenzo and Panella
### (Violation of RICO, 18 U.S.C. § 1962(c))

220.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

221.   Metropolitan Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

222.   Rodriguez-Lorenzo and Panella knowingly have conducted and/or participated, directly or indirectly, in the conduct of Metropolitan Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Metropolitan Medical was not eligible to receive under the No-Fault Law because: (i) Metropolitan Medical unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Metropolitan Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the

underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

223.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".

224.   Metropolitan Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Rodriguez-Lorenzo and Panella operated Metropolitan Medical, inasmuch as Metropolitan Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Metropolitan Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Metropolitan Medical Defendants continue to attempt collection on the fraudulent billing submitted through Metropolitan Medical to the present day.

225.   Metropolitan Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Metropolitan Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

226.    GEICO has been injured in its business and property by reason of the
above-described conduct in that it has paid at least $1,100,000.00 pursuant to the
fraudulent bills submitted through the Metropolitan Medical enterprise.

227.    By reason of its injury, GEICO is entitled to treble damages, costs, and
reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the
Court deems just and proper.

### EIGHTEENTH CAUSE OF ACTION
Against Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa
(Violation of RICO, 18 U.S.C. § 1962(d))

228.    GEICO incorporates, as though fully set forth herein, each and every
allegation in paragraphs 1-96 above.

229.    Metropolitan Medical is an ongoing "enterprise," as that term is defined
in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

230.    Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and
Sosa are or were employed by or associated with the Metropolitan Medical enterprise.

231.    Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and
Sosa knowingly have agreed, combined and conspired to conduct and/or participate,
directly or indirectly, in the conduct of Metropolitan Medical's affairs through a
pattern of racketeering activity consisting of repeated violations of the federal mail
fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit
or cause to be submitted thousands of fraudulent charges on a continuous basis for
over two years seeking payments that Metropolitan Medical was not eligible to receive
under the No-Fault Law because: (i) Metropolitan Medical unlawfully was operated

in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Metropolitan Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

232.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4". Each such mailing was made in furtherance of the mail fraud scheme.

233.   Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

234.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,100,000.00 pursuant to the fraudulent bills submitted through the Metropolitan Medical enterprise.

235.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### NINETEENTH CAUSE OF ACTION
#### Against the Metropolitan Medical Defendants
#### (Under Fla. Stat. 501.201 et. seq.)

236.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

237.   The Metropolitan Medical Defendants are actively engaged in trade and commerce in the State of Florida.

238.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

239.   The Metropolitan Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

240.   The bills and supporting documents submitted or caused to be submitted by the Metropolitan Medical Defendants to GEICO were fraudulent in that they misrepresented: (i) Metropolitan Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

241.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the Metropolitan Medical Defendants has been materially injurious to GEICO and its Insureds.

242.    The conduct of the Metropolitan Medical Defendants was the actual and proximate cause of the damages sustained by GEICO.

243.    The Metropolitan Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $1,100,000.00.

244.    By reason of the Metropolitan Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**TWENTIETH CAUSE OF ACTION**
**Against the Metropolitan Medical Defendants**
**(Common Law Fraud)**

245.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

246.    The Metropolitan Medical Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Metropolitan Medical for the Fraudulent Services.

247.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Metropolitan Medical was in compliance with the Clinic Act and eligible to collect PIP Benefits in

the first instance, when in fact Metropolitan Medical never was in compliance with the Clinic Act, and never was eligible to collect PIP Benefits, because it was operated without a legitimate medical director; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

248.   The Metropolitan Medical Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Metropolitan Medical that were not reimbursable.

249.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,100,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Metropolitan Medical Defendants through Metropolitan Medical.

250.   The Metropolitan Medical Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

251.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<u>TWENTY-FIRST CAUSE OF ACTION</u>
Against the Metropolitan Medical Defendants
(Unjust Enrichment)

252.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-96 above.

253.    As set forth above, the Metropolitan Medical Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

254.    When GEICO paid the bills and charges submitted or caused to be submitted by the Metropolitan Medical Defendants through Metropolitan Medical, it reasonably believed that it was legally obligated to make such payments based on the Metropolitan Medical Defendants' improper, unlawful, and/or unjust acts.

255.    The Metropolitan Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Metropolitan Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

256.    The Metropolitan Medical Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

257.    By reason of the above, the Metropolitan Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,100,000.00.

95

## TWENTY-SECOND CAUSE OF ACTION
### Against Hurtado-Hernandez and Panella
### (Violation of RICO, 18 U.S.C. § 1962(c))

258.  GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

259.  Serenity Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

260.  Hurtado-Hernandez and Panella knowingly have conducted and/or participated, directly or indirectly, in the conduct of Serenity Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Serenity Medical was not eligible to receive under the No-Fault Law because: (i) Serenity Medical unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Serenity Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented

and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

261.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5".

262.  Serenity Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Hurtado-Hernandez and Panella operated Serenity Medical, inasmuch as Serenity Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Serenity Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Serenity Medical Defendants continue to attempt collection on the fraudulent billing submitted through Serenity Medical to the present day.

263.  Serenity Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Serenity Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

264.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $750,000.00 pursuant to the fraudulent bills submitted through the Serenity Medical enterprise.

265.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### TWENTY-THIRD CAUSE OF ACTION
**Against Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

266.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

267.   Serenity Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

268.   Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez are or were employed by or associated with the Serenity Medical enterprise.

269.   Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Serenity Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Serenity Medical was not eligible to receive under the No-Fault Law because: (i) Serenity Medical unlawfully was operated in violation of the Clinic

Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Serenity Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

270.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5". Each such mailing was made in furtherance of the mail fraud scheme.

271.   Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

272.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $750,000.00 pursuant to the fraudulent bills submitted through the Serenity Medical enterprise.

273.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### TWENTY-FOURTH CAUSE OF ACTION
#### Against the Serenity Medical Defendants
#### (Under Fla. Stat. 501.201 et. seq.)

274.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

275.    The Serenity Medical Defendants are actively engaged in trade and commerce in the State of Florida.

276.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

277.    The Serenity Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

278.    The bills and supporting documents submitted or caused to be submitted by the Serenity Medical Defendants to GEICO were fraudulent in that they misrepresented: (i) Serenity Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

279.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of the Serenity Medical Defendants has been materially injurious to GEICO and its Insureds.

280.   The conduct of the Serenity Medical Defendants was the actual and proximate cause of the damages sustained by GEICO.

281.   The Serenity Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $750,000.00.

282.   By reason of the Serenity Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**TWENTY-FIFTH CAUSE OF ACTION**
**Against the Serenity Medical Defendants**
**(Common Law Fraud)**

283.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

284.   The Serenity Medical Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Serenity Medical for the Fraudulent Services.

285.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Serenity Medical was in compliance with the Clinic Act and eligible to collect PIP Benefits in the first instance, when in fact Serenity Medical never was in compliance with the Clinic Act,

101

and never was eligible to collect PIP Benefits, because it was operated without a legitimate medical director; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

286.   The Serenity Medical Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Serenity Medical that were not reimbursable.

287.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $750,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Serenity Medical Defendants through Serenity Medical.

288.   The Serenity Medical Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

289.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-SIXTH CAUSE OF ACTION
### Against the Serenity Medical Defendants
### (Unjust Enrichment)

290.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-96 above.

291.   As set forth above, the Serenity Medical Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

292.   When GEICO paid the bills and charges submitted or caused to be submitted by the Serenity Medical Defendants through Serenity Medical, it reasonably believed that it was legally obligated to make such payments based on the Serenity Medical Defendants' improper, unlawful, and/or unjust acts.

293.   The Serenity Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Serenity Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

294.   The Serenity Medical Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

295.   By reason of the above, the Serenity Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $750,000.00.

<u>TWENTY-SEVENTH CAUSE OF ACTION</u>
Against Macuya-Horta and Panella
(Violation of RICO, 18 U.S.C. § 1962(c))

296.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

297.   Guardian Angel Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

298.   Macuya-Horta and Panella knowingly have conducted and/or participated, directly or indirectly, in the conduct of Guardian Angel Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Guardian Angel Health was not eligible to receive under the No-Fault Law because: (i) Guardian Angel Health unlawfully was operated in violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Guardian Angel Health Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the

underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

299.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "6".

300.   Guardian Angel Health's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Macuya-Horta and Panella operated Guardian Angel Health, inasmuch as Guardian Angel Health was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Guardian Angel Health to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Guardian Angel Health Defendants continue to attempt collection on the fraudulent billing submitted through Guardian Angel Health to the present day.

301.   Guardian Angel Health is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Guardian Angel Health in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

302.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills submitted through the Guardian Angel Health enterprise.

303.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## TWENTY-EIGHTH CAUSE OF ACTION
### Against Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez
### (Violation of RICO, 18 U.S.C. § 1962(d))

304.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

305.   Guardian Angel Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

306.   Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez are or were employed by or associated with the Guardian Angel Health enterprise.

307.   Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Guardian Angel Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Guardian Angel Health was not eligible to receive under the No-Fault Law because: (i) Guardian Angel Health unlawfully was operated in

violation of the Clinic Act's medical director and licensing requirements; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Guardian Angel Health Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

308.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "6". Each such mailing was made in furtherance of the mail fraud scheme.

309.   Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

310.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills submitted through the Guardian Angel Health enterprise.

311.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### TWENTY-NINETH CAUSE OF ACTION
#### Against the Guardian Angel Health Defendants
#### (Under Fla. Stat. 501.201 et. seq.)

312.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

313.   The Guardian Angel Health Defendants are actively engaged in trade and commerce in the State of Florida.

314.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

315.   The Guardian Angel Health Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

316.   The bills and supporting documents submitted or caused to be submitted by the Guardian Angel Health Defendants to GEICO were fraudulent in that they misrepresented: (i) Guardian Angel Health's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

317.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of the Guardian Angel Health Defendants has been materially injurious to GEICO and its Insureds.

318.   The conduct of the Guardian Angel Health Defendants was the actual and proximate cause of the damages sustained by GEICO.

319.   The Guardian Angel Health Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $1,000,000.00.

320.   By reason of the Guardian Angel Health Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**THIRTIETH CAUSE OF ACTION**
**Against the Guardian Angel Health Defendants**
**(Common Law Fraud)**

321.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-96 above.

322.   The Guardian Angel Health Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Guardian Angel Health for the Fraudulent Services.

323.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Guardian Angel Health was in compliance with the Clinic Act and eligible to collect PIP Benefits in

the first instance, when in fact Guardian Angel Health never was in compliance with the Clinic Act, and never was eligible to collect PIP Benefits, because it was operated without a legitimate medical director; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

324.   The Guardian Angel Health Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Guardian Angel Health that were not reimbursable.

325.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,000,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Guardian Angel Health Defendants through Guardian Angel Health.

326.   The Guardian Angel Health Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

327.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**THIRTY-FIRST CAUSE OF ACTION**
**Against the Guardian Angel Health Defendants**
**(Unjust Enrichment)**

328.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-96 above.

329.   As set forth above, the Guardian Angel Health Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

330.   When GEICO paid the bills and charges submitted or caused to be submitted by the Guardian Angel Health Defendants through Guardian Angel Health, it reasonably believed that it was legally obligated to make such payments based on the Guardian Angel Health Defendants' improper, unlawful, and/or unjust acts.

331.   The Guardian Angel Health Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Guardian Angel Health Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

332.   The Guardian Angel Health Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

333.   By reason of the above, the Guardian Angel Health Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,000,000.00.

## JURY DEMAND

334.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against Best Care Medical, Gulf Bay Care, Memorial Medical, Metropolitan Medical, Serenity Medical, and Guardian Angel Health, for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Best Care Medical, Gulf Bay Care, Memorial Medical, Metropolitan Medical, Serenity Medical, and Guardian Angel Health have no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Consuegra and Panella, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,550,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,550,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.      On the Fourth Cause of Action against Best Care Medical, Consuegra, Panella, and Martinez, compensatory damages in an amount to be determined at trial but in excess of $1,550,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.      On the Fifth Cause of Action against Best Care Medical, Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $1,550,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against Best Care Medical, Consuegra, Panella, Consuegra, Panella, Ravipati, Diamantides, Soto, Morales, Santiago, and Gonzalez, more than $1,550,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

G.      On the Seventh Cause of Action against Y. Rodriguez, Linares-Chi, and Panella, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.      On the Eighth Cause of Action against Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.     On the Ninth Cause of Action against Gulf Bay Care, Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $1,000,000.00 together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

J.     On the Tenth Cause of Action against Gulf Bay Care, Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $1,000,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

K.     On the Eleventh Cause of Action against Gulf Bay Care, Y. Rodriguez, Linares-Chi, Panella, Ravipati, Fossi, Diamantides, C. Hernandez, Soto, and Gonzalez, more than $1,000,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

L.     On the Twelfth Cause of Action against Portal and Panella, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

M.     On the Thirteenth Cause of Action against Portal, Panella, Diaz, and Huice Sosa, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

N.      On the Fourteenth Cause of Action against Memorial Medical, Portal, Panella, Diaz, and Huice Sosa, compensatory damages in an amount to be determined at trial but in excess of $1,000,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

O.      On the Fifteenth Cause of Action against Memorial Medical, Portal, Panella, Diaz, and Huice Sosa, compensatory damages in an amount to be determined at trial but in excess of $1,000,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

P.      On the Sixteenth Cause of Action against Memorial Medical, Portal, Panella, Diaz, and Huice Sosa, more than $1,000,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

Q.      On the Seventeenth Cause of Action against Rodriguez-Lorenzo and Panella, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,100,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

R.      On the Eighteenth Cause of Action against Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,100,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

S.      On the Nineteenth Cause of Action against Metropolitan Medical, Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa, compensatory damages in an amount to be determined at trial but in excess of $1,100,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

T.      On the Twentieth Cause of Action against Best Metropolitan Medical, Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa, compensatory damages in an amount to be determined at trial but in excess of $1,100,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

U.      On the Twenty-First Cause of Action Metropolitan Medical, Rodriguez-Lorenzo, Panella, Merced, Oliva, Perez, De Dios, Silva, and Sosa, more than $1,100,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

V.      On the Twenty-Second Cause of Action against Hurtado-Hernandez and Panella, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $790,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

W.      On the Twenty-Third Cause of Action against Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $790,000.00, together with treble

damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

X.     On the Twenty-Fourth Cause of Action against Serenity Medical, Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $790,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

Y.     On the Twenty-Fifth Cause of Action against Serenity Medical, Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $790,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Z.     On the Twenty-Sixth Cause of Action against Serenity Medical, Hurtado-Hernandez, Panella, Ravipati, Morales, and Gonzalez, more than $790,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

AA.    On the Twenty-Seventh Cause of Action Against Macuya-Horta and Panella, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

BB.    On the Twenty-Eighth Cause of Action Against Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,000,000.00, together with treble

117

damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

CC.    On the Twenty--Ninth Cause of Action against Guardian Angel Health, Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $1,000,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

DD.    On the Thirtieth Cause of Action against Guardian Angel Health, Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez, compensatory damages in an amount to be determined at trial but in excess of $1,000,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

EE.    On the Thirty-First Cause of Action against Guardian Angel Health, Macuya-Horta, Panella, Ravipati, Morales, and Gonzalez, more than $1,000,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: February 8, 2022

*/s/ Kristen L. Wenger*
John P. Marino (FBN 814539), Lead Counsel
Lindsey R. Trowell (FBN 678783)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

*Attorneys for Plaintiffs*